| | |
|---|---|
| IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO<br>901 19th Street<br>Denver, Colorado 80294-3589<br><br>JEAN STEELE, *as the widow of* Irvin J. Steele *and* MICHAEL STEELE *as Personal Representative of the Estate of* Irvin J. Steele<br>**Plaintiffs:**<br><br>*v.*<br><br>PRIDE MOBILITY PRODUCTS CORPORATION, *and*<br>VISCOUNT VEHICLE SHENZEN CO., LTD<br>**Defendants:** | <br><br><br><br><br><br><br><br><br><br><br><br>△ **COURT USE ONLY** △ |
| Lee N. Sternal<br>Reg. #0899<br>414 West 9th Street<br>Pueblo, CO   81003<br>Tele.: (719) 545-9746<br>Fax: (719) 545-1122<br>Attorney for Plaintiff | Civil Action Number: |
| **COMPLAINT** | |

Plaintiffs, by their undersigned counsel for their cause of action state and allege as follows:

## GENERAL ALLEGATIONS

1.)     Plaintiff Jean Steele is the widow of Irvin J. Steele who died in Aurora Colorado at the Anschutz Impatient Pavilion on April 20, 2010.

2.)     Plaintiff Michael Steele is a son of Jean and Irvin and the personal representative of his father's estate which is pending as case #10PR514 in the District Court of Pueblo County, Colorado.

1

3.)     Defendant Pride Mobility Products, hereinafter referred to as Pride, is a Pennsylvania Corporation which business includes the design, outsource manufacture, supervision, assembly, testing, labeling, advertising and sale of specialized wheel chair equipment to assist persons with special personal mobility challenges.

4.)     Defendant Viscount Vehicle Shenzhen Co., Ltd., hereinafter referred to as Viscount, upon information not   received from employees and agents of defendant Pride until April 3 2012, is located in China where at the time relevant to this case it manufactured and supplied  the  seat  cushions for defendant Pride's  power wheel chairs and has been made a defendant for the reason that it is unknown if Viscount's identity was disclosed on the Pride product that is the subject of this litigation.  However, due to the inability to discover the existence of Viscount, no prior notice of this litigation could be provided prior to expiration of the allowed time in which to file this action.

5.)     This court has jurisdiction of this matter pursuant to *28 U.S.C. 1332* and venue is proper in this court.

6.)     One of the principal products of defendant Pride is their Jazzy model power wheel chairs for which it initially obtained Federal Drug Administration permission to sell and provide to members of the public in 1996.

7.)     In December 2007 defendant Pride, though one of its authorized retailers, the "Scooter Store", did sell and deliver its Jazzy model power chair serial #J8311107063C30 to Irvin Steele in Rye, Colorado.

8.)     Irvin Steele took delivery of said model Jazzy chair with its foam cushions in exactly the same condition as supplied by defendant Pride and no modifications were made to them during the time the Jazzy unit was in his possession.

9.)     The seat cushion and backrest cushion on said Jazzy unit were manufactured by defendant Viscount according to specifications supplied by defendant Pride.

10.)     Defendant Pride resisted disclosing to plaintiffs' undersigned counsel the identity of the supplier of said seat and backrest cushions and the page of the Pride 510(k) application which makes direct reference to the supplier of the vinyl coverings and of the cushions themselves has been redacted and could not be determined even after Freedom of Information Act inquiry since said source is being kept secret for the spurious reason that it is a "trade secret". See attached exhibit no. 1.

11.)     Although plaintiffs' ascertainment of the correct identity of the seat and backrest cushion supplier had long been frustrated, Pride has been on notice that plaintiffs considered that manufacturer, if independently identified by tags or labels incorporated in its cushion products, to be a proper and separate defendant. However, if no such separate identifying information was attached, then pursuant to *C.R.S. 13-21-401* Pride is presumed to be their legal manufacturer.

12.)     Defendant Pride, acting through past and present agents and employees, provided specifications to Viscount for the flame resistance standard to be incorporated into the upholstery material used on the seat cushions of its "Jazzy" power chair products.

13.)     To obtain FDA approval to first sell the Jazzy product in 1996 defendant Pride represented to the FDA that the vinyl material used to upholster its foam backrest and seat

cushions met both the California standard 117 and the far greater fire resistance standard FMVSS 302 which has been required to be met by motor vehicle seats since 1972. (See exhibit #1).

14.)   Irvin Steele was a COPD diabetic and the diabetes had caused the partial loss of a leg. Despite his impairments he, nevertheless, attempted to enjoy as active and productive a life style as possible.  He was very much the type of consumer Pride intended to be a user of its Jazzy power chair products.

15.)   On April 9, 2010 while Irvin Steele was working at his workbench applying heat from a handheld propane torch to a water valve secured in his workbench vice, a glowing ember type spark did drop onto his trousers.  When he attempted to brush it off it fell between his legs and onto the seat of his Jazzy power chair.

16.)   The vinyl like seat cover material instantly burst into flames which Irvin Steele was unable to extinguish and the fire did then spread to his clothes.

17.)   Although he was physically unable to extricate himself from the burning Jazzy power chair he was able to drive it out of his garage workshop and into view of his kitchen window where his screams were heard by his wife, Jean, who despite getting burned herself was able to push him out of the burning chair and the fires were then extinguished with water applied by herself and her son, the plaintiff Michael Steele.

18.)   The burns sustained by Irvin Steele covered  approximately 45% of his body.

19.)   After being taken by ambulance to St. Mary Corwin Medical Center in Pueblo Colorado Irvin Steele was taken by flight for life to Aurora, Colorado where, as a proximate result of having sustained said burns, he was hospitalized until he died on April 20, 2010 after

having been provided medical care and treatment that had a total reasonable value of over $300,000 Dollars.

## FIRST CLAIM FOR RELIEF

### (Negligence)

Plaintiffs incorporate and reallege as many of the above allegations as necessary and further allege as follows:

20.)   Defendants Pride and Viscount owed a duty to Irvin Steele and all other similarly situated persons to use reasonable care in the design and manufacture of said Jazzy model power chair to see that its upholstered foam seating surfaces were as fire and flame resistant as reasonably possible.

21.)   The defendants' duty to exercise such reasonable care was magnified by their knowledge that anyone using a wheel chair has some serious degree of physical impairment.

22.)   It was reasonably foreseeable that many daily activities of Jazzy power chair users would involve potential exposure to risks that included exposure to fire or heat sources that could ignite fire and said knowledge mandated that defendants use special care to see that the seating surfaces of said Jazzy product were reasonably fire resistant since it was obvious that persons in wheelchairs do typically lack the degree of mobility to quickly exit themselves from a wheel chair that catches fire.

23.)   Defendants negligently fell beneath reasonable standards of care by failing to cause said seating surfaces to be treated with the most fire and flame resistant protection reasonably available and which available treatments provide a far greater degree of protection than what is afforded by compliance with California standard 117.

24.)   The failure of defendants to have utilized one of the far more effective and available fire resistance treatments was willful and wanton.

25 .)   Defendant Pride also negligently failed to utilize an ongoing process of testing to determine if its Jazzy products were being manufactured in compliance with their represented degree of flame resistance.

26.)   The seat and back rest cushions on the Jazzy chair used by Irvin Steele did not meet even the minimal fire resistance standard known as FMVSS 302 required for automobile seating surfaces since 1972.

27.)   As a proximate result of the negligent and willful and wanton failure to have observed reasonable standards of care the vinyl upholstery on the Jazzy chair being used by Irvin Steele was not reasonably fire resistant and Irvin Steele was caused to sustain life ending burns which have caused plaintiffs to sustain the injuries, damages and losses herein alleged including the plaintiff Jean Steele's loss of his society and companionship and also severe emotional distress and other damages of a non-economic and economic nature.

**WHEREFORE**, for their First Claim for relief the plaintiff estate of Irvin Steele seeks judgment for the medical and hospital and related care and treatment expenses incurred during the time Irvin Steele was alive after being burned on April 9, 2010, until his death on April 20, 2010 and the Plaintiff Jean Irvin seeks compensation in a reasonable amount to be proven at trial for the economic and non-economic injuries, damages and losses she has been caused to sustain by the fact and manner of the wrongful death of her husband, Irvin Steele.  Plaintiffs also seek judgment for interest and costs and exemplary damages as allowed by law.

## SECOND CLAIM FOR RELIEF

(Strict Liability)

Plaintiffs incorporate and reallege as many of the above allegations as necessary and further allege as follows:

28.)   The lack of reasonable cushion flammability resistance made the Jazzy power chair an unreasonably dangerous and defective product at the time it was sold because it was reasonably foreseeable that occupants of Jazzy power chairs, because of their physically impaired circumstances, would be subject to not only the same but actually greater risks of exposure to fire as users of automobile seats but be less likely to timely extricate themselves from flames and therefore require even more fire resistant seat seating surfaces than what has been required for automobiles since 1972.

29.)   It was reasonably foreseeable that the users, such as Irvin Steele, of the Jazzy power chair product would expect and assume, because of the proximity to its battery electrical system, that the seating surfaces on the Jazzy power chair would be as fire and flame resistant as could reasonably be provided and that they were at least as flame and fire resistant as are automobile seats.

30.)   Defendants, upon reasonable information and belief, were aware that electrical problems had caused certain power wheel chairs to catch fire.

31.)   The lack of reasonable seating surface flame and fire resistance makes the Jazzy product inherently dangerous since California standard 117 provides less than one tenth of the degree of fire protection that is required for automobile seating systems and because far more effective fire resistant treatments were and are reasonably available.

32.)   The lack of reasonable flame resistance of the Jazzy seating surfaces, especially since so many wheel chair users also require supplemental oxygen, and are seriously physically impaired, makes the Jazzy product unreasonably dangerous and placing it into the stream of commerce, especially without compliance with even VMVSS 302, was a proximate cause of the death of Irvin Steele.

*WHEREFORE*, defendants are strictly liable for the injuries, damages and losses hereinabove alleged and plaintiffs reassert their above prayer for relief.

## THIRD CLAIM FOR RELIEF
(Negligent Failure to Warn)

Plaintiffs incorporate and reallege as many of the above allegations as necessary and further allege as follows:

33.)   Defendants breached their duty to warn by failing to provide reasonable information, warnings and instructions with their products so that users, such as decedent Irvin Steele,  were informed that the upholstery covering on the cushions of the Jazzy Power Chair was far less fire resistant than their automobile seats and that, in fact, by being in compliance with California standard #117 they were no more fire resistant than many forms of  paper.

34.)   The only warning published by defendant Pride is on a tag that is attached to the underside of the seat cushion where it is all but impossible for the typical wheel chair user to even find.   It cautions against exposure to flame or cigarettes but gives no meaningful information about how dangerously flammable the upholstery material is and how once it commences to burn it will not self extinguish.

35.)    The literature that is provided to the consumer of a Jazzy product, including the product involved in this case, makes no mention, whatsoever, of fire danger or of the flammability propensity of the upholstery cover material.

36.)    The lack of any warning, or of any meaningful warning, either attached to the upholstery material or in the accompanying user instructions or advertising material, of the low flammability point negligently creates the false impression that the Jazzy seats must be reasonably fire resistant so that the danger of being burned from the seat material while using a Jazzy power chair is no greater than the fire danger associated with using an automobile or even an airplane seat.

37.)    As a proximate result of said failure of defendants to have provided reasonable or adequate warning of the lack of fire resistance should their seat cushions be exposed to a heat source, the plaintiffs have been caused, by the death of Irvin Steele, to have sustained the injuries, damages and losses hereinabove alleged.

*WHEREFORE* plaintiffs reassert their above declared prayer for relief.

### FOURTH CLAIM FOR RELIEF
(Breach of Express and Implied Warranties of Merchantability)

Plaintiffs reallege and incorporate as many of the above allegations as necessary and further allege as follows:

38.)    Defendant Pride was aware that electrical problems had caused power wheel chairs to catch fire and nevertheless failed to take reasonable steps to increase the flammability resistance of its products beyond the minimally required criteria of California standard 117 even though far more flame resistant treatments were readily available and easily could have been utilized.

9

39.)    Defendant Pride expressly and impliedly warranted that its Jazzy model power wheel chair was reasonably fit for its intended purpose even though its lack of reasonable flame resistance made it not of merchantable quality at the time it was sold.

40.)    It was reasonably foreseeable that a potential purchaser or user of said Jazzy product would assume that said product, with its declared safety features and multiple uses depicted in its advertising and product user information, would be at least as resistant to fire as are automobile seats and in fact, even as fire resistant as are passenger aircraft seats.

41.)    Defendant Pride breached both express and implied warranties of fitness for use by selling and continuing to sell a product it knew was not merchantable because of its unreasonably dangerous inability to withstand exposure to fire and heat sources without bursting into flame.

42.)    Defendant Pride further breached an implied warranty of merchantability with wanton indifference by continuing to manufacture and sell its Jazzy Power chair product without the degree of flame resistance declared in its 510(k) application when it knew it could be exposed to cigarettes or flame and, nevertheless, failed to provide reasonable warnings or instructions so users would have the chance to avoid or minimize the injuries and damages it could foreseeably cause if exposed to even a minimal degree of flame or concentrated heat.

43.)    Defendant Pride was previously given specific notice of these allegations of lack of reasonable flammability protection by personal verbal and written contact with its in-house legal counsel in December 2010 and by personal contact with its agents and representatives who inspected the burned Steele Jazzy product prior to the initiation of this litigation.

44.)    As a proximate result of said breach of express and implied warranties of fitness for use, plaintiffs have been caused to suffer the injuries, damages and losses hereinabove alleged.

*WHEREFORE*, plaintiffs pray for damages against Defendant Pride to reasonably and justly compensate them for their various injuries, damages and losses together with costs, including expert witness fees, interest and exemplary damages as allowed by law.

## FIFTH CLAIM FOR RELIEF

### (Misrepresentation)

Plaintiffs reallege and incorporate as many of the above allegations as necessary and further allege as follows:

45.)    To obtain approval to sell its Jazzy power chair products defendant Pride did affirmatively represent that the upholstery covering the Jazzy seating surface cushions met the same flammability resistance standard FMVSS-302 which is required for automobile seats.

46.)    The federal Medicare administration has relied upon the various Pride made representations and caused the Jazzy product to be supplied to thousands of Medicare patients, including to Irvin Steele, who was in the group obligated to accept the representations of product suitability and safety made to Medicare by Pride.

47.)    Defendant Pride has intentionally not produced its Jazzy product with that level of fire resistance required by FMVSS-302 which it declared it had satisfied by the representations made in its 510(k) application.

48.)    Defendant Pride by having certified to the FDA that the Jazzy vinyl meets the standard of FMVSS-302 engages in a deceptive trade practice by manufacturing its Jazzy product without meeting the upholstery flame resistance protection required by FMVSS-302.

49.)    The Pride Jazzy power chair product being used by Irvin Steele did not meet the

flame resistance standard requirements of FMVSS-302.

50.)    The additional flame resistance protection afforded by compliance with FMVSS-

302 would have either completely prevented or greatly minimized the burns caused to Irvin

Steele.

*WHEREFORE* plaintiffs seek judgment against defendant Pride to reasonably and justly

compensate them for their various injuries, damages and losses together with costs, including

expert witness fees and interest and exemplary damages as allowed by law.

## SIXTH CLAIM FOR RELIEF

(Colorado Consumer Protection Act)

Plaintiffs incorporate and reallege as many of the above allegations as necessary and

further allege as follows:

51.)    Pride claims that its Jazzy model is the most popular power chair in the United

States so it is reasonable to assume that numerous persons are already using it and that many

hundreds more will also shortly be using a Jazzy power chair product.

52.)    Every aspect of defendant Pride's advertising of and provided information about

is Jazzy power chair product is a direct or implied representation that it can be used with safety

by its physically impaired consumers.

53.)    Consumers such as Irvin Steele have relied upon the representation that the Jazzy

power chair product is reasonably safe.

54.)    It is reasonable for consumers such as Irvin Steele to believe that the Jazzy power

chair product may be safely used and that by using it one is not subject to a much greater degree

of danger from its possible exposure to flame than exists with the use of an automobile seat and that if it is accidentally exposed to flame it will not instantly commence to burn.

55.)    As a proximate result of Irvin Steele having relied upon the express and implicit safety representations made by defendant Pride, the plaintiffs have been caused to incur the injuries, damages and losses herein above alleged.

*WHEREFORE*, in addition to the above requested relief, plaintiffs also seek judgment against defendant Pride for the damages mandated by *C.R.S. 6-1-113* for violation of the Colorado Consumer Protection Act.

Respectfully submitted this 5th day of April 2012.

LEE N. STERNAL, P.C.

By: _____
Lee N. Sternal, #0899
414 West 9th
Pueblo, CO 81003
719-545-9746
jmandarich@lnslaw.net

## JURY DEMAND

Plaintiffs demand trial to a Jury of six persons for all disputed issues.

Plaintiff's Address
8235 Zorn Road
Rye, CO 81069